UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

TELENOR EAST INVEST AS,

                                        Plaintiff,

                    v.

FARIMEX PRODUCTS, INC., ECO TELECOM
LIMITED and ALTIMO HOLDINGS &
INVESTMENTS LIMITED,

                                        Defendants.

---

08 Civ. 5623 (PKC)
ECF CASE

NOTICE OF MOTION TO DISMISS

              PLEASE TAKE NOTICE that, upon the Complaint, a copy of which is

annexed hereto; the accompanying Declaration of Ronald S. Rolfe, executed August 21,

2008, with exhibits thereto; the Declaration of Oxana Balayan, executed August 21, 2008

with exhibits thereto; and the August 22, 2008 Memorandum of Law in Support of Motion

to Dismiss of Eco Telecom Limited and Altimo Holdings & Investments Limited, and

upon all other papers and prior proceedings herein, Defendants Eco Telecom Limited and

Altimo Holdings & Investments Limited, hereby move this Court, Hon. P. Kevin Castel,

District Judge at the United States Courthouse, 500 Pearl Street, Courtroom 12C, New

York, New York, for an order pursuant to Fed. R. Civ. P. 12(b)(6) dismissing Plaintiff's

Complaint in its entirety against Defendants Eco Telecom Limited and Altimo Holdings & Investments Limited for failure to state a claim, and granting such other and further relief as the Court may deem just and proper.

August 21, 2008

CRAVATH, SWAINE & MOORE LLP,

by _____
Ronald S. Rolfe
A member of the firm

Worldwide Plaza
825 Eighth Avenue
New York, NY 10019-7475
(212) 474-1000
rrolfe@cravath.com

*Attorneys for Defendants Altimo Holdings & Investments Limited and Eco Telecom Limited*

TO:

Robert L. Sills, Esq.
    Orrick, Herrington & Sutcliffe LLP
        666 Fifth Avenue
           New York, NY 10103

Peter S. O'Driscoll, Esq.
    Orrick, Herrington & Sutcliffe LLP
        Tower 42, Level 35
           25 Old Broad Street
              London EC2N 1HQ
                DX: 557 London/City
                  UNITED KINGDOM

*Attorneys for Plaintiffs*

JUDGE CASTEL

Robert L. Sills (RS 8896)
Jay K. Musoff (JM 8716)
David M. Fine (DF 4479)
Orrick, Herrington & Sutcliffe LLP
666 Fifth Avenue, New York, New York 10103
Telephone: (212) 506-5000
Facsimile: (212) 506-5151

- and -

Peter S. O'Driscoll
Orrick, Herrington & Sutcliffe LLP
25 Old Broad Street
London EC2N 1HQ
DX: 557 London/City
United Kingdom
Telephone: 011 44 20 7562 5000

Attorneys for Plaintiff

**'08  CIV 5623**

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
----------------------------------------------------------- X
                           :

**TELENOR EAST INVEST AS,**
                           :

                 Plaintiff,           :       08-CV-

                           :       ECF CASE

           -against-             :

**FARIMEX PRODUCTS, INC., ECO**          :       **COMPLAINT**
**TELECOM LIMITED and ALTIMO**
**HOLDINGS & INVESTMENTS LIMITED,**        :

                 Defendants.       :

                           :
----------------------------------------------------------- X

        Plaintiff Telenor East Invest AS ("Telenor East") alleges, upon knowledge

as to itself and its own acts, and upon information and belief as to all other matters, by its

undersigned attorneys, for its complaint against Defendants, as follows:

## INTRODUCTION

1.      This action arises out of the violation of the arbitration agreements entered into between Telenor East and various affiliates of the Alfa Group Consortium (the "Alfa Group") – namely, Altimo Holdings & Investments Limited ("Altimo") and Eco Telecom Limited ("Eco Telecom") (collectively, the "Alfa Entities") – in the Shareholders Agreement and related Guarantee in respect of Telenor East and Eco Telecom's joint ownership of Open Joint Stock Company "Vimpel-Communications," the second largest mobile telecommunications company in Russia ("VimpelCom").

2.      As set forth below, the Alfa Entities have attempted to circumvent their contractual obligations to arbitrate any disputes arising out of the Shareholders Agreement and the Guarantee through collusive litigation filed in Siberia by a fourth Alfa Group affiliate, a British Virgin Islands shell company called Farimex Products, Inc. ("Farimex").

3.      Farimex is subject to the complete control of Altimo Entities.  In its Siberian litigation, Farimex makes virtually identical allegations, and seeks virtually identical relief, as that sought by Eco Telecom in an arbitration proceeding recently commenced by Eco Telecom in Geneva, Switzerland, in which Eco Telecom seeks damages of $1 billion.  Declaratory and injunctive relief is therefore required to prevent the Alfa Entities and Farimex from evading their obligations under the arbitration provisions of the Shareholders Agreement by pursuing litigation that the Alfa Entities could not bring themselves, in a proceeding in which Telenor East has not been served and which is being conducted in a remote court that has already proceeded to the damages phase of the case without first assessing liability.

2

## JURISDICTION AND VENUE

4.      This Court has jurisdiction over the subject matter of this action pursuant to Chapter 2 of the Federal Arbitration Act (the "FAA"), 9 U.S.C. §§ 203 and 206.

## THE PARTIES

### I.      PLAINTIFF

5.      Telenor East is, and at all times relevant herein, has been, a corporation duly organized and existing under the laws of the Kingdom of Norway, with its principal place of business in Fornebu, Norway.  It is an indirect wholly-owned subsidiary of Telenor ASA ("Telenor ASA"), also a Norwegian corporation.  Telenor ASA is the largest provider of telecommunications services in Norway.  Through its various subsidiaries and affiliates, Telenor ASA has mobile telecommunications operations in 12 countries.  53.97% of Telenor ASA's issued and outstanding shares are held by the Ministry of Trade and Industry of the Kingdom of Norway; the remainder are publicly held.  Telenor ASA's shares are listed in Norway on the Oslo Stock Exchange. The company has over 40,000 shareholders.

6.      For many years, Telenor ASA has invested in, and developed strategic partnerships with, mobile telecommunications companies located outside of Norway.  As of June 2008, Telenor ASA and its affiliates in Europe and Asia had over 150 million mobile subscribers, making Telenor ASA the seventh largest mobile telephone company in the world.  Measured by the market value of its investments, Telenor ASA is the second largest foreign investor in Russia.  As of the date of this complaint, Telenor East owns 29.9% of the voting capital stock of VimpelCom.

3

## II.    DEFENDANTS

7.    Altimo, formerly known as Alfa Telecom Limited, is, and at all times relevant herein, has been, a corporation organized and existing under the laws of the British Virgin Islands. Altimo is majority owned and controlled by the Alfa Group, and acts as a holding company for the Alfa Group's telecommunications assets.

8.    Eco Telecom is, and at all times relevant herein, has been, a corporation organized and existing under the laws of Gibraltar. As of the date of this complaint, according to documents filed with the U.S. Securities and Exchange Commission (the "SEC"), Eco Telecom beneficially owns approximately 44.00001% of VimpelCom's voting shares. Eco Telecom is wholly owned by Altimo, and acts as a holding company for Altimo's VimpelCom's shares.

9.    As noted above, Farimex is, and at all times relevant herein, has been, a corporation organized and existing under the laws of the British Virgin Islands. The only known director of Farimex is Dmitry Lvovich Fridman, the first cousin of Mikhail Fridman, a co-founder and the Chairman of the Supervisory Board of the Alfa Group. Farimex is a shell company with no operations of its own. As of the date of this complaint, according to documents filed with the Business Court for the Khanty-Mansi Autonomous Okrug in the Russian Federation, Farimex beneficially owns 25,000 American Depositary Receipts of VimpelCom ("ADRs"), which represent an interest in 1,250 shares of VimpelCom's common stock.

## III.    THE ALFA GROUP

10.    The Alfa Group is one of Russia's largest privately owned financial-industrial groups, with interests in oil and gas, commodities trading, commercial and investment banking, insurance, retail trade and telecommunications. The group was founded and is controlled by, among others, Mikhail Fridman and Peter Aven.

## IV.    VIMPELCOM

11.    VimpelCom is the second largest mobile telecommunications company in Russia, and holds licenses to operate in all eight regions in Russia. By the end of December 2007, VimpelCom had approximately 51.7 million subscribers, including approximately 9.5 million subscribers in countries other than Russia that were formerly part of the Soviet Union.

## FACTUAL ALLEGATIONS

## V.    THE VIMPELCOM SHAREHOLDERS AGREEMENT

12.    On May 30, 2001, as a condition to Eco Telecom becoming a shareholder of VimpelCom through the acquisition of shares from VimpelCom's co-founder, Dr. Dmitry Zimin, as well as new shares directly from VimpelCom, Telenor East and Eco Telecom entered into a shareholders agreement (the "Shareholders Agreement") concerning VimpelCom's corporate governance. A true and correct copy of the Shareholders Agreement is attached hereto as Exhibit A.

13.    The Shareholders Agreement governs, among other things, the parties' right to nominate candidates for election to VimpelCom's Board of Directors (the "Board"), with Telenor East entitled to nominate five candidates for election to the Board, and Eco Telecom entitled to nominate four candidates. Telenor East's fifth candidate must be approved by Eco Telecom. Shareholders Agreement § 4.01.

5

14.     The Shareholders Agreement also contains an arbitration clause, which provides that "[a]ny and all disputes and controversies arising under, relating to or in connection with this Agreement shall be settled by arbitration by a panel of three (3) arbitrators under the United Nations Commission on International Trade Law (UNCITRAL) Arbitration Rules . . ." Shareholders Agreement § 6.13(a). "The place of the arbitration shall be Geneva, Switzerland." Id. at § 6.13(a)(ii).

15.     With respect to enforcement, the Shareholders Agreement specifies that "[t]he award of the arbitrators may be enforced by any court of competent jurisdiction and may be executed against the person and assets of the losing party in any competent jurisdiction." Shareholders Agreement § 6.13(a)(vii).

16.     The Shareholders Agreement generally prohibits litigation between the parties, with limited exceptions for litigation necessary to give effect to the agreement's arbitration clause. "Except for arbitration proceedings pursuant to Section 6.13(a), no action, lawsuit or other proceeding (other than the enforcement of an arbitration decision, an action to compel arbitration or an application for interim, provisional or conservatory measures in connection with the arbitration) shall be brought by or between the parties to this Agreement in connection with any matter arising out of or in connection with this Agreement." Shareholders Agreement § 6.13(b).

17.     The Shareholders Agreement provides that the parties may be served with legal process in New York. "Each Shareholder irrevocably appoints CT Corporation System, located on the date hereof at 111 Eighth Avenue, 13th Floor, New York, New York 10011, USA, as its true and lawful agent and attorney to accept and acknowledge service of any and all process against it in any judicial action, suit, or

proceeding permitted by Section 6.13(b), with the same effect as if such party were a resident of the State of New York and had been lawfully served with such process in such jurisdiction . . ." Shareholders Agreement § 6.13(c).

18.     The Shareholders Agreement likewise provides that New York courts shall have jurisdiction with respect to the limited types of litigation allowed by the agreement. "Each party hereby irrevocably submits to the non-exclusive jurisdiction of the United States District Court for the Southern District of New York and of any New York state court sitting in New York City, in connection with any such action, suit or proceeding . . ." Shareholders Agreement § 6.13(c).

19.     Section 6.13(c) of the Shareholders Agreement further provides that "[e]ach party hereby irrevocably waives, to the fullest extent permitted by Law, any objection that it may now or hereafter have to the laying of the venue of any such action, suit or proceeding brought in such a court and any claim that any such action, suit or proceeding brought in such a court has been brought in an inconvenient forum."

20.     The Shareholders Agreement contains a choice of law provision which states that "[t]his Agreement shall be governed by, and construed in accordance with, the laws of the State of New York, United States of America, without giving effect to any conflicts of laws principles thereof which would result in the application of the laws of another jurisdiction." Shareholders Agreement § 6.14.

21.     CTF Holdings Limited ("CTF"), a corporation organized and existing under the laws of Gibraltar, with a controlling interest, directly or indirectly, in Altimo, serves as a holding company for the Alfa Group. CTF and an entity called Eco Holdings Limited ("Eco Holdings") entered into a Guarantee Agreement on May 30,

2001 (the "Guarantee") for the benefit of, among others, Telenor East. The Guarantee

contains essentially the same arbitration clause as the Shareholders Agreement. A true

and correct copy of the Guarantee is attached hereto as Exhibit B.

        22.     Following a transfer by Eco Holdings to Altimo of all of Eco

Holdings' ownership interests in Eco Telecom, the Guarantee was amended by an

Endorsement dated March 19, 2007 (the "Endorsement") which had the effect of making

Altimo a party to the Guarantee in place of Eco Holdings "as if [Altimo] were an original

signatory to the Guarantee." A true and correct copy of the Endorsement is attached

hereto as Exhibit C.

## VI.    THE PATTERN OF ALFA GROUP'S ATTACKS ON TELENOR'S OWNERSHIP INTEREST IN VIMPELCOM

### A.    The Makarenko Litigation

        23.     In the summer and autumn of 2004, Eco Telecom's nominees on

VimpelCom's Board were actively promoting the proposed acquisition by VimpelCom of

Ukrainian Radio Systems, a small Ukrainian mobile operator doing business under the

name of WellCom ("URS").

        24.     Under the terms of VimpelCom's charter, an acquisition of shares

in another company requires the approval of 80% of the members of the Board, *i.e.*, eight

of the nine members.

        25.     Although Telenor East's nominees on the Board supported

VimpelCom's expansion into Ukraine, they were skeptical about the proposed acquisition

of URS due to, among other things, a very high proposed purchase price, URS's lack of

subscribers and poor market position, the massive investment that would be required to

make URS profitable, a complete lack of transparency in the transaction, including no

disclosure to the Board of the identity of URS's ultimate beneficial owners, and rumors that Alfa Group executives were the true financial beneficiaries of the transaction.

26.    In October 2004, a 25-year old individual named Victor Makarenko, who was a resident of Temryuk, Russia and the purported owner of two shares of VimpelCom common stock, filed the first of three lawsuits against VimpelCom challenging the minority protections in VimpelCom's charter, including the provision requiring that acquisitions be approved by at least eight members of the Board. The suits were filed in rural courts in the Krasnodar region of southern Russia.

27.    Mr. Makarenko's claims contained detailed confidential information regarding the proposed acquisition by VimpelCom of URS. This information was available only to members of the Board and senior VimpelCom management.

28.    In the second suit he filed, Mr. Makarenko obtained a default judgment that purported to invalidate the minority protection provisions of VimpelCom's charter. In order to protect its rights, Telenor East intervened in these cases, and appealed the principal case directly to the Russian Supreme Court. In June 2005, the court order purporting to invalidate the minority protection provisions of VimpelCom's charter was overturned by the Russian Supreme Court.

29.    Telenor East requested that Russian prosecutors investigate whether the lower courts involved in the case brought by Mr. Makarenko were the subject of improper influence. An investigation was conducted, and a judge involved in one of the cases brought by Mr. Makarenko was removed from his position.

30.     Despite the direct alignment of their interests with Mr. Makarenko's claims, and Mr. Makarenko's possession of documents that could have come only from them or VimpelCom's Management, Eco Telecom's nominees on the Board denied that the Alfa Group was involved in Mr. Makarenko's actions.

**B.     The Eco Telecom Litigation**

31.     In May 2005, Eco Telecom filed its own action in a Moscow court against VimpelCom and three of Telenor East's nominees on the VimpelCom Board, seeking to suspend the minority protections in VimpelCom's charter and authorizing the acquisition of URS by a simple majority of the Board.

32.     The claim filed by Eco Telecom made allegations similar to the allegations made in one of the claims filed by Mr. Makarenko and sought similar relief. When it became clear that the Russian Supreme Court intended to rule in favor of Telenor East in the Makarenko case (which Telenor East had appealed), Eco Telecom withdrew its lawsuit.

**C.     Eco Telecom's Refusal To Comply with the Shareholders Agreement**

33.     Prior to VimpelCom's annual general meeting ("AGM") in June 2005, Eco Telecom nominated seven candidates for election to the Board, in direct violation of its obligation under the Shareholders Agreement to nominate no more than four. In addition, Eco Telecom failed to respond to multiple requests from Telenor East to approve two potential fifth candidates put forward by Telenor East.

34.     As a consequence of Eco Telecom's conduct, Telenor East was forced to engage in a lengthy proxy contest with Eco Telecom, as each party sought to have its nominees elected to the Board. At that point in time, Eco Telecom owned 32.9% of VimpelCom's voting shares, and Telenor East owned only 26.6% of the voting shares.

10

Eco Telecom was able to use its voting share advantage to secure the election of five of its seven candidates to the Board at the June 2005 AGM. Only four of Telenor East's five candidates were elected to the Board.

35.     In 2006, Eco Telecom again violated the Shareholders Agreement by nominating five candidates for election to the Board, and refused to withdraw any of them. In addition, Eco Telecom again refused to consent to the fifth nominee put forward by Telenor East for election to the Board.

### D.     The First Geneva Arbitration

36.     On November 19, 2005, Telenor East commenced an arbitration in Geneva, Switzerland governed by the UNCITRAL Arbitration Rules against Eco Telecom, CTF and Eco Holdings to enforce the provisions of the Shareholders Agreement relating to the nomination of candidates for election to the Board. In response, Eco Telecom asserted that this provision of the Shareholders Agreement was unenforceable, and that it had the unwaivable right to nominate nine candidates for election to the Board.

37.     On January 25, 2007, the arbitration tribunal in the Geneva arbitration (the "Tribunal") rendered an interim award (the "January 25, 2007 Award"), upholding the validity of the Shareholders Agreement and ruling that Eco Telecom could not nominate more than four candidates for election to the Board, and was required to approve one of the potential fifth candidates proposed by Telenor East.

38.     Eco Telecom initially refused to comply with the January 25, 2007 Award, and persisted in putting forward five nominees for election to the Board. On April 18, 2007, on Telenor East's application, the Tribunal issued an order instructing Eco Telecom to comply with the January 25, 2007 Award by May 14, 2007. On May 14,

2007, Eco Telecom complied with the Tribunal's order by withdrawing one of its candidates for election to the Board.

39.     The Tribunal issued its final award on January 21, 2008 (the "Final Award"), again in favor of Telenor East, upholding the validity of the Shareholders Agreement, limiting Eco Telecom to four nominees for election to the Board, establishing a procedure for Eco Telecom to approve Telenor East's fifth candidate and ordering Eco Telecom to pay $117,617.10 of Telenor East's attorneys' fees. Eco Telecom did not challenge the Final Award.

### E.    The Second Geneva Arbitration

40.     Eco Telecom commenced a new arbitration against Telenor East on March 21, 2008 (the "Second Geneva Arbitration"). A true and correct copy of Eco Telecom's Notice of Arbitration (the "Notice") is attached hereto as Exhibit D.

41.     In the Notice, Eco Telecom claims that Telenor East acted in bad faith by causing the directors it nominated to the Board to breach their fiduciary duties, allegedly by blocking VimpelCom's purchase of URS and thereby delaying VimpelCom's acquisition of URS by one year. Notice at ¶ 10.

42.     Eco Telecom maintains that Telenor East blocked VimpelCom's acquisition of URS in an effort to prevent VimpelCom from competing with a Ukrainian mobile operator, Closed Joint Stock Company "Kyivstar G.S.M." ("Kyivstar"), in which Telenor Mobile Communications AS ("Telenor Mobile"), an affiliate of Telenor East, owns 56.5% of the shares, and Storm LLC, an indirect subsidiary of Altimo, owns 43.5% of the shares. Id. at ¶ 11.

43.     Eco Telecom claims that VimpelCom suffered damages in the amount of $1 billion as a result of the one year delay in VimpelCom's acquisition of

12

URS, which Eco Telecom alleges was caused by Telenor East. Eco Telecom further claims that if VimpelCom had acquired URS one year earlier, its present value, and hence the value of VimpelCom, would be "significantly higher". Id. at ¶ 10.

44.     Telenor East has, in accordance with Section 6.13(a)(iii) of the Shareholders Agreement, nominated Professor William Park as its party-nominated arbitrator in the Second Geneva Arbitration, and Eco Telecom has nominated Jeffrey Herzfeld as its party-nominated arbitrator. The two party-nominated arbitrators are currently in the process of appointing a third arbitrator to serve as chairman of the arbitration tribunal.

45.     Eco Telecom's claim that Telenor East and its nominees on the Board blocked VimpelCom's expansion into Ukraine in order to protect Kyivstar is strikingly similar to claims made recently by Mikhail Fridman and other Russian shareholders in relation to TNK-BP Ltd. ("TNK"), a Russian oil and gas venture in which the Alfa Group and two other Russian shareholders own 50% and BP PLC ("BP") owns 50%. See "Tension Turns to Impasse For BP, Russian Partners," The Wall Street Journal Online (June 4, 2008).

**F.     The Siberian Litigation**

46.     On April 14, 2008, less than one month after Eco Telecom commenced the Second Geneva Arbitration, an undated statement of claim (the "Statement of Claim") was delivered to the Moscow office of Telenor Russia AS, a subsidiary of Telenor ASA and a sister company of Telenor East, by counsel for Farimex. Telenor East, which has no presence in Russia, has not been served in Norway in accordance with the Convention on the Service Abroad of Judicial and Extrajudicial Documents in Civil or Commercial Matters (The Hague, November 15, 1965) and the

13

statements made by Russia and the Kingdom of Norway at the time when they ratified the Convention.

47.      Farimex's Statement of Claim was filed in the Business Court for the Khanty-Mansi Autonomous Okrug (the "Khanty-Mansi Court") and names as defendants, in addition to Telenor East, the following Alfa Group subsidiaries:  Eco Telecom, Altimo, Open Joint Stock Company CT-Mobile ("CT Mobile"),[1] Avenue Limited ("Avenue"), Janow Properties Limited ("Janow") and Santel Limited ("Santel") . Farimex also named three of Telenor's former nominees on the Board, VimpelCom, and Alfa Group Supervisory Board members Mikhail Fridman and Alexei Reznikovich as third parties.  A true and correct copy of Farimex's Statement of Claim (without attachments), together with an English translation thereof, is attached hereto as Exhibit E.

48.      Farimex, which is incorporated in the British Virgin Islands, chose to file its claim in Khanty-Mansiysk, an oil town located in western Siberia, thousands of miles away from Moscow.  TNK, in which the Alfa Group is the leading Russian shareholder, has significant operations in and around Khanty-Mansiysk.

49.      In its Statement of Claim before the Khanty-Mansi Court, Farimex claims to own 25,000 VimpelCom ADRs (representing 1,250 shares of VimpelCom's common stock, which equates to 0.00002% of VimpelCom's 51,281,022 issued and outstanding shares of common stock).  The only evidence of Farimex's ADR holding in the Statement of Claim is a letter from Alfa Capital.  A true and correct copy of Alfa Capital's letter, along with an English translation, is attached as Exhibit F.

---

[1] The Alfa Group holds 25% plus one share of the Russian mobile operator Open Joint Stock Company "MegaFon," which is a competitor of VimpelCom, through CT Mobile. CT Mobile has no connection, through share ownership or otherwise, to VimpelCom.

50. Under Article 71(5) of the Joint Stock Company Law of the
Russian Federation, a plaintiff bringing a claim of the type brought by Farimex must be a
shareholder (as opposed to an ADR holder) and must own not less than 1% percent of the
common stock of the company. According to its Statement of Claim, Farimex holds only
ADRs and, even taking into account the number of shares of common stock represented
by its ADRs, has far less than 1% of VimpelCom's common stock.

51. Farimex's Statement of Claim is signed by D.S. Chernyi, acting
under a power of attorney dated March 31, 2008 (the "Power of Attorney"). The Power
of Attorney was signed by Dmitry Fridman, the sole director of Farimex and a first
cousin of Mikhail Fridman, a co-founder and the Chairman of the Supervisory Board of
the Alfa Group, who was also named as a third party in the Statement of Claim. A true
and correct copy of the Power of Attorney is attached hereto as Exhibit G.

52. Dmitry Fridman was an officer or employee of one or more entities
that were members of the Alfa Group when the Alfa Group was first formed. However,
other officers and directors of the Alfa Group, including Peter Aven, were unhappy with
his performance and persuaded Mikhail Fridman to cause Dmitry Fridman to leave the
Alfa Group. Following Dmitry Fridman's departure from the Alfa Group, Mikhail
Fridman established an offshore trust of which he retained under his control, for the
benefit of, among others, Dmitry Fridman, and funded it in the amount of approximately
$4 billion, with the express intention that this trust should be used for litigation, and
"corporate raiding" transactions outside Mikhail Fridman and Alfa Group's apparent
control. That trust is believed to be the beneficial owner of Farimex.

15

53.    Persons or entities connected to the Alfa Group are thus participating on all sides of Farimex's Siberian litigation (the "Siberian Litigation"), including playing the role of plaintiff, defendants (Eco Telecom, CT-Mobile, Avenue, Janow and Santel are all affiliates of the Alfa Group), and third parties (Mikhail Fridman and Alexei Reznikovich are both members of the Alfa Group Supervisory Board, and VimpelCom is 44.00001% owned by Eco Telecom and publicly claimed by Altimo to be under its "structural control").

54.    The claim asserted by Farimex in the Siberian Litigation in April 2008 is virtually identical to the claim that Eco Telecom submitted in the Second Geneva Arbitration commenced in March 2008. It alleges that Telenor East acted in bad faith by causing its nominees who were elected to the Board to prevent VimpelCom from acquiring URS based on the conflicting commercial interests of affiliates of Telenor East, and it seeks damages in the amount of $3.8 billion. Farimex has further petitioned the Khanty-Mansi Court to arrest Telenor East's shares in VimpelCom. A true and correct copy of Farimex's Request for Arrest of Shares, together with an English translation thereof, is attached hereto as Exhibit H.

55.    As was the case with respect to the litigation commenced by Victor Makarenko, Farimex's Statement of Claim and its attachments include information and documents only available to members of VimpelCom's Board and senior VimpelCom management and, in certain instances, only available to Altimo and its affiliates.

56.    Representatives of Eco Telecom have appeared in the Siberian Litigation, even though the Siberian Litigation involves factual allegations similar to

16

those in the Second Geneva Arbitration, and seeks relief similar to that sought in the Second Geneva Arbitration.

57.     The Khanty-Mansi Court issued an order on June 10, 2008, in which it ordered VimpelCom to produce voluminous amounts of financial information. The Court granted a motion made by Farimex for the appointment of an expert to determine the amount of VimpelCom's damages, even though there has been no determination of any of the respective defendants' liability, nor has there been a proceeding of any kind regarding liability. A true and correct copy of the Khanty-Mansi Court's June 10, 2008 order, together with an English translation thereof, is attached hereto as Exhibit I.

## G.     OTHER VEXATIOUS LITIGATION FILED BY THE ALFA GROUP AND ITS AFFILIATES

58.     In addition to the litigation discussed above, the Alfa Group has shown a pattern of pursuing frivolous and vexatious lawsuits against Telenor ASA's affiliates, either directly or through Alfa's affiliates.

59.     For example, Telenor Mobile, Altimo's wholly-owned subsidiary Storm and Kyivstar entered into a Shareholders Agreement dated January 30, 2004 (the "Kyivstar Shareholders Agreement") regarding the ownership and corporate governance of Kyivstar, which is the largest mobile operator in Ukraine. Despite an arbitration clause in the Kyivstar Shareholders Agreement specifying that all disputes between Telenor Mobile and Storm are required to be settled by arbitration in New York under the UNCITRAL Arbitration Rules, during the period from August 2005 through 2007, Storm and individuals connected to the Alfa Group commenced at least 15 separate legal proceedings in Ukrainian courts, aimed at, among other things, invalidating various

17

provisions of Kyivstar's charter and the Shareholders Agreement itself. A number of these Ukrainian lawsuits were brought by one Alfa Group entity or individual against another Alfa Group entity or individual, with injunctions or orders issued by the relevant Ukrainian courts that purported to bind third parties, including Telenor Mobile and its affiliates, who were not named as defendants.

60.    In February 2006, Telenor Mobile commenced an arbitration proceeding against Storm in relation to Storm's violations of the Kyivstar Shareholders Agreement. Storm claimed that the arbitration tribunal did not have jurisdiction, and that the Kyivstar Shareholders Agreement was invalid. In an effort to bolster its claims of invalidity with respect to the Kyivstar Shareholders Agreement, and to stop the arbitration, Alpren Limited ("Alpren"), an Alfa Group subsidiary, commenced several lawsuits in Ukraine against Storm and its general director. Alpren was represented in those suits by a lawyer used regularly by Storm.

61.    On April 25, 2006, a Ukrainian trial court issued a ruling, on Alpren's application declaring that the Kyivstar Shareholders Agreement was invalid. The minutes of that Ukrainian proceeding show that the hearing lasted a total of 14 minutes. Storm "appealed" the judgment, but on May 25, 2006, a Ukrainian appellate court affirmed that decision. Storm then moved before the arbitration tribunal to dismiss the arbitration, arguing that, based on the judgment rendered by the Ukrainian courts, the entire Kyivstar Shareholders Agreement was "null and void," and accordingly, that the tribunal lacked jurisdiction to hear the underlying dispute.

62.    Notwithstanding Storm's efforts, in October 2006, the arbitration tribunal issued an interim award in which it held that it had jurisdiction to hear the

18

dispute.  On November 13, 2006, Storm tried to halt the arbitration proceeding by filing

an action in New York state court seeking to enjoin the proceeding and vacate the

arbitration panel's interim award.  Telenor Mobile immediately removed the case to this

Court.  On November 22, 2006, Judge Gerard E. Lynch denied all of Storm's motions

seeking to enjoin the proceeding and vacate the panel's partial award.  Judge Lynch

described Storm's litigation efforts in the Ukraine as a "shabby tactic" which was "not to

be condoned."

      63.     Immediately prior to a hearing on the merits in the arbitration

scheduled to take place on December 7 and 8, 2006, Telenor Mobile and Storm received

notice from a Ukrainian court that they could face criminal prosecution in Ukraine if they

were to participate further in the arbitration.  Telenor Mobile filed a motion in the United

States District Court for the Southern District of New York asking Judge Lynch to issue a

preliminary anti-suit injunction against Altimo, Alpren and Storm that would permit the

arbitration to go forward.  On December 15, 2006, Judge Lynch granted that motion,

enjoining Altimo, Alpren and Storm and those acting in concert with them from

"bringing or attempting to cause the enforcement of any legal action in Ukraine that

could disrupt, delay or hinder in any way the arbitration proceedings between Telenor

and Storm in New York."

      64.     In granting the injunction, Judge Lynch observed that "[t]he

foreign litigation here has been conducted in the most vexatious way possible." *Storm*

*LLC v. Telenor Mobile Communications AS*, 2006 WL 3735657, *9 (S.D.N.Y. Dec. 15,

2006).  Judge Lynch went on to describe the lawsuits brought in Ukraine by Alfa, stating:

> After every set back in the arbitration or in this Court, parties associated
> with Storm have proceeded to the Ukrainian Courts, seeking and obtaining

broad rulings without any meaningful opposition.    Telenor seeks to arbitrate this dispute in a neutral forum; Storm and its parents seek to co-opt that process by resorting to a forum in which their home court advantage is magnified by their willingness to play the game without letting the other team show up.

      65.    Judge Lynch further held that:

[T]he Court is persuaded that Telenor is likely to succeed in establishing, at a minimum, that the litigation in Ukraine has been collusive, and not truly adversarial. The Ukrainian litigation was brought in Storm's as well as Alpren's interests, sought relief that Storm had every reason to desire, and was not meaningfully resisted by Storm or its general director. Storm has effectively conceded before this Court that it wants to preserve the Ukrainian judgment 'against' it. Accordingly, it is a fair inference, and one that on this limited record the Court finds more likely true than not, that Storm colluded in the bringing of this litigation against itself. It can therefore be enjoined from continuing with such actions.

2006 WL 3735657, at *12.  On December 18, 2006, Judge Lynch entered a formal order

binding on Altimo, Alpren and Storm.

      66.    Despite Judge Lynch's order, in late December 2006, the Alfa

Group caused Storm to file suit in a Ukrainian court against Kyivstar and its auditors,

Ernst and Young ("E&Y").  In that action, Storm claimed that the contract between

Kyivstar and E&Y for the provision of audit services had not been properly approved by

Kyivstar's Board.  The Ukrainian court immediately issued an injunction that, among

other things, purported to prohibit E&Y from completing its audit of Kyivstar's 2006

financial statements.

      67.    Following the first E&Y case, the Alfa Group subsidiary Alpren

filed two further actions against Kyivstar and E&Y.  In both cases, the Ukrainian judges

immediately issued sweeping injunctions purporting to bind Telenor and other entities

who were not parties to the relevant actions.  In the third case, the judge issued an

injunction purporting to prohibit Kyivstar from providing any information, financial or

otherwise, to any third party and purporting to prevent any person, including Telenor, from consolidating Kyivstar's financial results.

68.    On August 1, 2007, the arbitration tribunal in the Kyivstar arbitration issued a unanimous award in favor or Telenor Mobile. Shortly thereafter, Altimo arranged for one of its executives to seek, and obtain, and injunction against its own subsidiary, Storm, to enjoin compliance with the arbitrators' award.

69.    Thereafter, an action was brought by EC Venture SA ("EC Venture"), a Swiss corporation, in a rural Ukrainian court, seeking an injunction against Storm's compliance with the arbitrators' award. The shares of EC Venture are issued in bearer form, and there is no record of its ownership, and it was in liquidation in Switzerland until shortly before its Ukrainian action was commenced. As is the case with Farimex's Siberian litigation, EC Vemture's case was brought based on documents that could have come only from Altimo or its subsidiaries and their officers.

70.    In a highly publicized ongoing dispute with BP over TNK. Alfa Group has resorted to the same abusive litigation tactics. There is a small Russian brokerage firm known as ZAO Tetlis Limited ("Tetlis"), whose only known principals are two former Alfa Group employees, and which claims a miniscule shareholding in TNK-BP, has sought and obtained sweeping injunctive relief against BP in a local Siberian court. It is widely reported in the press that Tetlis is controlled by Alfa Group and is acting for Alfa Group's benefit and under Alfa Group's control.

## COUNT I
### Defendants Eco Telecom and Altimo Are Violating Their Arbitration Agreements By Participating In The Collusive Siberian Litigation

71.     Plaintiff repeats and repleads each allegation set forth in Paragraphs 1 through 67, inclusive, and incorporates them by reference herein.

72.     Defendants Eco Telecom and Altimo could not themselves sue Telenor East in the Khanty-Mansi Court, because they are signatories to the arbitration clauses contained in the Shareholders Agreement and/or the Guarantee (as amended by the Endorsement). Instead, Eco Telecom and Altimo are conducting such litigation through Defendant Farimex. Farimex's litigation is for the interests of and under the control of Alfa Group's affiliates including Altimo.

73.     If the relief sought by Farimex in the Siberian Litigation is granted, there is a risk that the Khanty-Mansi Court will arrest Telenor East's shares in VimpelCom and sell them at auction to satisfy Farimex's $3.8 billion damage claim. If the relief sought by Farimex were granted, there is a possibility Eco Telecom could acquire Telenor East's 29.9% stake in VimpelCom and thereby become the sole majority shareholder of VimpelCom. Eco Telecom thus has a far greater stake in Farimex prevailing in the Siberian Litigation than Farimex does.

74.     Eco Telecom beneficially owns approximately 44.00001% of VimpelCom's voting shares, as compared to the 0.00002% held by Farimex. Although Eco Telecom is nominally a defendant in the Siberian Litigation, it actually has a complete identity of interests with the nominal plaintiff, Farimex. The same identity of interests exists between Farimex and Altimo (which owns 100% of Eco Telecom).

75.    Defendants Eco Telecom and Altimo are circumventing their arbitration agreements with Telenor East by participating in the Siberian Litigation instead of abiding the outcome of the Second Geneva Arbitration.

76.    Unless enjoined by this Court, Eco Telecom's and Altimo's conduct will cause immediate and irreparable harm to Telenor East. Telenor East has no adequate remedy at law.

**COUNT II**
**Defendant Farimex Is Violating The Shareholders Agreement's**
**Arbitration Clause, To Which It Is Bound As The Alter-Ego of Eco Telecom**

77.    Plaintiff repeats and repleads each allegation set forth in Paragraphs 1 through 73, inclusive, and incorporates them by reference herein.

78.    Farimex is an affiliate of Eco Telecom and Altimo, as evidenced by its close ties to the Alfa Group both in terms of its personnel (its sole director is the first cousin of Alfa Group co-founder and Chairman of its Supervisory Board, Mikhail Fridman) and the effort and expense it is undertaking to advance Eco Telecom's interests in a remote Siberian court.

79.    In prosecuting the Siberian Litigation, Farimex is in fact acting as the agent and alter-ego of Eco Telecom and Altimo. Farimex has no distinct corporate identity apart from Eco Telecom, as its conduct (as well as the domination and control over it exercised by the Alfa Group and Mikhail Fridman) demonstrates an abandonment of separateness between the two entities.

80.    In light of the foregoing, Farimex is bound by the terms of the arbitration clause contained in the Shareholders Agreement, and Telenor East is entitled to an order and judgment compelling Farimex to submit such claims to arbitration.

81.    Unless enjoined by this Court, Farimex's Siberian litigation will

cause immediate and irreparable harm to Telenor East. Telenor East has no adequate

remedy at law.

WHEREFORE, Telenor East demands judgment against the Defendants,

as follows:

a.    that all Defendants, together with their officers, agents, servants,
employees and attorneys, and all persons in active concert or
participation with them, be restrained and enjoined from:

(1)    commencing, prosecuting, enforcing, causing the
enforcement, attempting to enforce or causing the
enforcement, or;

(2)    allowing, or failing to take steps to prevent, any other
person, official or entity from enforcing or attempting to
enforce;

in any manner whatsoever, direct or indirect, of any legal action,
suit, or proceeding before any court or tribunal, whether in the
Khanty-Mansi Autonomous Okrug of Russia or any other
jurisdiction, that would (a) disrupt, delay or hinder, in any manner
whatsoever, the arbitration proceedings between Eco Telecom and
Telenor East arising out of or relating to the Shareholders
Agreement, or (b) that seeks substantially similar relief to that
sought in such arbitration;

b.    that Defendant Farimex be compelled to submit its dispute with
Telenor East and Eco Telecom to arbitration, in accordance with
the terms of the Shareholders Agreement; and

c.    awarding Telenor East such other relief as the Court deems just
and proper.

Dated:    New York, New York
          June 20, 2008

ORRICK, HERRINGTON & SUTCLIFFE LLP

By: _Robert L Sills_____

Robert L. Sills (RS 8896)
Jay K. Musoff (JM 8716)
David M. Fine (DF 4479)
666 Fifth Avenue
New York, New York 10103
Telephone: (212) 506-5000
Facsimile:  (212) 506-5151

Peter S. O'Driscoll
ORRICK, HERRINGTON & SUTCLIFFE LLP
Tower 42, Level 35
25 Old Broad Street
London EC2N 1HQ
DX:  557 London/City
United Kingdom
Telephone:  011 44 20 7562 5000
Facsimile:   011 44 20 7628 0078

Attorneys for Plaintiff
Telenor East Invest AS