UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

TELENOR EAST INVEST AS,

                                    Plaintiff,

                    v.                                          08 Civ. 5623 (PKC)
                                                                ECF CASE
FARIMEX PRODUCTS, INC., ECO TELECOM
LIMITED and ALTIMO HOLDINGS &
INVESTMENTS LIMITED,

                                    Defendants.

---

**MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS OF ECO
TELECOM LIMITED AND ALTIMO HOLDINGS & INVESTMENTS LIMITED**

## Table of Contents

**Page**

Table of Authorities ......................................................................................................... ii

Preliminary Statement .......................................................................................................1

Statement of Facts.............................................................................................................3

Argument .........................................................................................................................6

    A.    PLAINTIFF HAS FAILED TO ALLEGE FACTS SUFFICIENT TO
    RENDER ITS CLAIMS FACIALLY PLAUSIBLE .........................................7

        1.    Plaintiff's Alter Ego Theory Fails..........................................................7

        2.    Plaintiff's Agency Theory Fails............................................................12

    B.    PLAINTIFF FAILS TO MEET THE REQUIREMENTS FOR AN
    ANTI-SUIT INJUNCTION ...........................................................................15

        1.    The Arbitration is Not Dispositive of the Farimex Litigation .............16

        2.    Consideration of the Additional Anti-Suit Injunction Factors
        Militates in Favor of Dismissal............................................................18

Conclusion .....................................................................................................................23

## Table of Authorities

**Page(s)**

CASES

*Am. Fuel Corp. v. Utah Energy Dev. Co., Inc.*, 122 F.3d 130 (2d Cir. 1997) ..........................8

*ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87 (2d Cir. 2007) ................................4, 6

*Bell Atl. Corp. v. Twombly*, --- U.S. ---, 127 S. Ct. 1955 (2007) ...........................................6, 9

*China Trade & Dev. Corp. v. M.V. Choong Yong*,
    837 F.2d 33 (2d Cir. 1987)............................................................................. 7, 16, 18-19, 21

*Citak & Citak v. St. Paul Travelers Cos.*, No. 07 Civ. 5459(WHP), 2008 WL 1882660
    (S.D.N.Y. Apr. 28, 2008)......................................................................................................15

*City Nat'l Bank of Florida v. Morgan Stanley DW, Inc.*, No. 05 Civ.
    2739(DLC)(JCF), 2007 WL 927428 (S.D.N.Y. Mar. 29, 2007), *adopted*, 2007
    WL 1425790 (S.D.N.Y. May 15, 2007) ...............................................................................15

*De Jesus v. Sears, Roebuck & Co.*, 87 F.3d 65 (2d Cir. 1996) ................................................15

*First Nationwide Bank v. Gelt Funding Corp.*, 27 F.3d 763 (2d Cir. 1994)............................6

*In re Alstom SA Sec. Litig.*, 406 F. Supp. 2d 402 (S.D.N.Y. 2005) ........................................11

*In re Arbitration Between Monegasque De Reassurances S.A.M. v. Nak Naftogaz Of
    Ukraine*, 311 F.3d 488 (2d Cir. 2002) ................................................................................22

*In re Bank of New York Derivative Litig.*, 320 F.3d 291 (2d Cir. 2003) ................................11

*In re Parmalat Secs. Litig.*, 501 F. Supp. 2d 560 (S.D.N.Y. 2007) ..................................13, 14

*In re Rationis Enter., Inc. of Panama*, 261 F.3d 264 (2d Cir. 2001) ......................................16

*Iqbal v. Hasty*, 490 F.3d 143 (2d Cir. 2007).............................................................................2

*Kalin v. Xanboo, Inc.*, 526 F. Supp. 2d 392 (S.D.N.Y. 2007) ..................................................8

*Kramer v. Time Warner, Inc.*, 937 F.2d 767 (2d Cir. 1991) .....................................................4

*LAIF X SPRL v. Axtel, S.A. de C.V.*, 390 F.3d 194 (2d Cir. 2004) .........................6, 16, 18, 21

*Local Union No. 38, Sheet Metal Workers Intern. Ass'n, AFL-CIO v. A&M Heating,
    Air*, 314 F. Supp. 2d 332 (S.D.N.Y. 2004) ........................................................................9

*MasterCard Int'l, Inc. v. Argencard S.A.*, No. 01 Civ. 3027(JGK), 2002 WL 432379
(S.D.N.Y. Mar. 20, 2002) ...................................................................................... 6-7, 19

*Morris v. New York State Dep't of Taxation & Fin.*, 623 N.E.2d 1157 (N.Y. 1993)................8

*Mortimer Off Shore Servs., Ltd. v. Fed. Rep. of Germany*, No. 05 Civ. 10669(GEL),
2007 WL 2822214 (S.D.N.Y. Sept. 27, 2007)...................................................................2

*Overseas Media, Inc. v. Skvortsov*, 441 F. Supp. 2d 610 (S.D.N.Y. 2006), *aff'd*, 2008
WL 1994981 (2d Cir. May 8, 2008) ...............................................................................22

*Phoenix Co., Inc. v. Abrahamsen*, No. 05 Civ. 4894(WHP), 2006 WL 2847812
(S.D.N.Y. Sept. 28, 2006) ...............................................................................................12

*Rose v. Goldman, Sachs & Co., Inc.*, 163 F. Supp. 2d 238 (S.D.N.Y. 2001) .........................10

*Shah v. Meeker*, 435 F.3d 244 (2d Cir. 2006)...........................................................................6

*Storm LLC v. Telenor Mobile Commc'ns AS*, No. 06 Civ. 13157(GEL), 2006 WL
3735657 (S.D.N.Y. Dec. 15, 2006)..................................................................................20

*Triemer v. Bobsan Corp.*, 70 F. Supp. 2d 375 (S.D.N.Y. 1999)..............................................10

*William Wrigley Jr. Co. v. Waters,* 890 F.2d 594 (2d Cir. 1989) ..............................................8

### STATUTES & RULES

Fed. R. Civ. P. 12(b)(6)...............................................................................................1, 6, 23

### OTHER AUTHORITIES

2A Moore & Lucas, *Moore's Federal Practice* ¶ 12.08 (2d ed. 1984) .....................................6

Defendants Altimo Holdings & Investments Limited ("Altimo") and Eco Telecom Limited ("Eco Telecom") (together "Defendants") respectfully submit this memorandum in support of their motion to dismiss the complaint (the "Complaint" or "Cpl.") of Telenor East Invest AS ("Plaintiff" or "Telenor") pursuant to Fed. R. Civ. P. 12(b)(6).

### Preliminary Statement

Plaintiff seeks an anti-suit injunction against a foreign litigation. Plaintiff's claims hinge on the implausible assertion that Defendants, affiliates of the Alfa Group Consortium ("Alfa Group"), are prosecuting a lawsuit against themselves in Khanty-Mansiysk, Russia, that, in effect, forces them to defend claims Defendant Eco Telecom has asserted against Plaintiff in a separate, ongoing arbitration. Plaintiff fails to allege sufficient facts to render its claims facially plausible. Moreover, Plaintiff has not pleaded — and cannot meet — the requirements for an anti-suit injunction.

Plaintiff and Eco Telecom are presently engaged in an arbitration initiated by Eco Telecom against Telenor (the "Arbitration") in Geneva, pursuant to a shareholders agreement (the "Shareholders Agreement") governing Open Joint Stock Company Vimpel-Communications ("VimpelCom"), a Russian telecommunications company whose major stockholders are Plaintiff and Eco Telecom.[1] The Arbitration involves claims growing out of VimpelCom's acquisition of a Ukrainian telecommunications company, Ukrainian Radiosystems ("URS"). Subsequent to the initiation of the Arbitration, another VimpelCom shareholder, Farimex Products, Inc. ("Farimex"), commenced a lawsuit in Khanty-Mansiysk, Russia, naming, among others, Eco Telecom, Altimo and Plaintiff as defendants (the "Farimex

---

[1]    Telenor holds 29.9% of VimpelCom's voting stock and Eco Telecom holds 44.0001%.

Litigation"). Plaintiff alleges that Defendants are prosecuting this lawsuit in violation of the Shareholders Agreement, through Farimex, which is either Defendants' alter ego or agent.

Plaintiff's allegations of identity and collusion between Defendants and Farimex are far-fetched. It was Eco Telecom that commenced an arbitration about Telenor's delay of VimpelCom's acquisition of URS. It is nonsensical to argue that Eco Telecom (or Altimo) has commenced a suit in Russia to avoid the very arbitration it initiated—and that it named itself and other Altimo affiliates as defendants. Moreover, neither Eco Telecom nor Altimo stands to gain from the Farimex Litigation. Unlike in the Arbitration, where Eco Telecom has requested relief in the form of damages to be paid *to Eco Telecom* (Cpl. Ex. D, at ¶ 13), Farimex has requested relief in the form of damages to be paid *to VimpelCom*.[2] (*Id.* Ex. E, at 21-22.)

Given the extreme implausibility of Plaintiff's claims here, Plaintiff is obligated to amplify them "with some factual allegations [sufficient] to render [them] plausible". *Mortimer Off Shore Servs., Ltd. v. Fed. Rep. of Germany*, No. 05 Civ. 10669(GEL), 2007 WL 2822214, at *6 (S.D.N.Y. Sept. 27, 2007) (quoting *Iqbal v. Hasty*, 490 F.3d 143, 158 (2d Cir. 2007)). Plaintiff has failed to meet this obligation. The few facts that Plaintiff offers in support of its allegations are either irrelevant or otherwise fail to support Plaintiff's claims. Specifically, Plaintiff has failed to allege facts sufficient to support its conclusory assertion that Defendants are in some way prosecuting the Farimex Litigation. Moreover, the fact that the Arbitration would not be dispositive of the Farimex Litigation — a point that Plaintiff fails to address in its complaint — is also fatal to its claims. Finally, consideration of the other factors

---

[2] In ruling on the merits of the Farimex Lawsuit, the Russian court "stated that the damages should be paid to VimpelCom". (Declaration of Ronald S. Rolfe, executed August 21, 2008 ("Rolfe Decl.") Ex. A.)

required for an anti-suit injunction also counsel for dismissal.  Thus, Plaintiff's claims should be dismissed.

**Statement of Facts**

Eco Telecom and Altimo are affiliates of Alfa Group.  (Cpl. ¶¶ 7, 8.)  Alfa Group is one of Russia's largest privately owned financial-industrial conglomerates.  (*Id*. ¶ 10.)  On May 30, 2001, Eco Telecom and Plaintiff entered into the Shareholders Agreement, which governs their relationship as shareholders of VimpelCom.  (*Id*. ¶¶ 12, 13.)  A later guarantee agreement binds Altimo to the Shareholders Agreement.  (*Id*. ¶¶ 21, 22.)  Both agreements contain broad arbitration clauses providing for arbitration in Geneva.  (*Id*. ¶¶ 14, 21.)

In November 2005, VimpelCom acquired 100% of URS.  (*See* Cpl. Ex. D, at ¶ 9.)  On March 21, 2008, Eco Telecom noticed the Arbitration asserting that Plaintiff had breached the Shareholders Agreement and applicable law governing the duties of shareholders and corporate directors by causing its directors to delay VimpelCom's acquisition of URS.  (*Id*. ¶¶ 40-42.)  In the Arbitration, Eco Telecom alleges that the URS acquisition was delayed by approximately one year due to the actions of Plaintiff and the directors Plaintiff nominated to the VimpelCom Board of Directors.  (*Id*. Ex. D, at ¶¶ 10-12.)

On or about April 14, 2008, Farimex, a British Virgin Islands company and VimpelCom shareholder,[3] sued Plaintiff, Defendants and various affiliates of Defendants,

---

[3] Contrary to Plaintiff's assertion that Farimex "suddenly" acquired American Depository Shares ("ADSs") of VimpelCom (*See* Rolfe Decl. Ex. B, at 5), Farimex has owned VimpelCom ADSs since 2004.  (*Id*. Ex. C (attaching accurate translation of Cpl. Ex. F).)  The basis for Plaintiff's erroneous belief appears to be an inaccurate translation it made of the underlying document.  In addition, a Farimex exhibit shows that Farimex owns shares of a number of blue chip companies, including Unified Energy and Highland Gold Mining Limited.  (Rolfe Decl. Ex. E.)

3

alleging joint and several liability (Cpl. Ex. E, at 21-22), in a court in Khanty-Mansiysk, Russia

asserting claims in the amount of approximately $3.8 billion, based on VimpelCom's delayed

entry into the Ukrainian market, including its delayed acquisition of URS.  (*Id.* ¶¶ 46-48, 54; *id.*

Ex. E, at 1-2.)  In addition, Farimex named VimpelCom, two VimpelCom directors nominated

by Eco Telecom and three VimpelCom directors nominated by Plaintiff as "Third Parties".

(Cpl. Ex. E, at 1-2.)  Farimex sought an order attaching the VimpelCom shares of Plaintiff and

Eco Telecom.  This request was denied on April 15, 2008.  (Rolfe Decl. Ex. D.)[4]  At a

subsequent hearing on June 10, 2008, one VimpelCom director nominated by Plaintiff

submitted a petition asking the court to dismiss the claim, asserting that Farimex did not have

standing.  (*See* Cpl. Ex. I, at 2.)  At this same hearing, another VimpelCom director nominated

by Plaintiff submitted a petition arguing that the Russian court did not have jurisdiction and

requesting that the case be transferred to the Moscow Arbitrazh Court.  (*Id.* at 3.)  The Russian

court denied both petitions.  (*Id.*)

---

[4] On a motion to dismiss, the Court may consider documents incorporated into the complaint by reference, documents that the Plaintiff relied upon in bringing the suit, (*ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007)), or matters of which judicial notice may be taken, without converting the motion to one for summary judgment. *Kramer v. Time Warner, Inc.*, 937 F.2d 767, 773-774 (2d Cir. 1991) (noting that courts routinely take judicial notice of documents filed in other courts to establish the fact of related filings).

Telenor describes and relies upon the documents attached to the Farimex Litigation complaint, but fails to attach those documents to its Complaint. (Cpl. ¶ 47.)  Because Telenor's Complaint is based on the Farimex Litigation, the Court may consider all documents in that litigation without converting the motion to one for summary judgment, since such documents are "known to the [P]laintiff" and relied on in bringing the instant Complaint. *ATSI Commc'ns*, 493 F.3d at 98.

On June 20, 2008, Plaintiff filed its Complaint asserting, among other things, that Farimex "is subject to the complete control" of Defendants (Cpl. ¶ 2), that Farimex is the alter ego or agent of Defendants (*id.* ¶ 79) and that Defendants are violating the Shareholders Agreement by bringing the "collusive" Farimex Litigation (*id*. Count I).  Plaintiff alleges that Farimex is controlled by Dmitry Fridman and that Dmitry Fridman is the cousin of Alfa Group Supervisory Board Chairman Mikhail Fridman (*id.* ¶ 51); that Farimex is owned by an "offshore trust" established by Mikhail Fridman for the express purpose of engaging in litigation and "corporate raiding" on behalf of Alfa Group (*id.* ¶ 52); that certain documents Farimex provided to the Russian court demonstrate a relationship between Farimex and "Alfa Capital" (*id.* ¶ 49); and that Farimex's pleadings include documents that only could have been obtained from Defendants (*id.* ¶ 55).

Subsequent to the filing of Plaintiff's Complaint, the Russian court held a number of relevant proceedings.  In a six-hour hearing that took place on July 15, 2008, Plaintiff appeared before the Russian court and asked the court, among other things, to recuse the judge and to transfer the case to another court.  (Rolfe Decl. Ex. F.)  The Chairman of one of the Panels of the court — not the presiding judge who was the subject of the recusal motion — heard and denied the motion.  The presiding judge upheld Telenor's substantive motion to involve independent "arbitrazh assessors" in deciding the case, who, together with the presiding judge would form the court's Panel for the case.  The presiding judge rejected Plaintiff's other motions and, at the request of Plaintiff and the other parties, the hearings were suspended until August 12, 2008, to allow, among other things, the parties to appoint "arbitrazh assessors".  At the August 12 hearing, two arbitrazh assessors were nominated — one each by defendants in that case and by Farimex.  The court then suspended the hearing until August 14, 2008.  On

August 16, 2008, the Russian court ruled that Telenor had damaged VimpelCom by delaying the URS acquisition and awarded VimpelCom damages in the amount of $2.8 billion. (*Id*. Ex. A.) During the hearings in July and August, Telenor's representatives made many procedural motions but failed to move to dismiss the case on the basis that it was subject to an arbitration agreement.

## Argument

On a motion to dismiss, the court must accept all factual allegations in the complaint as true and draw all reasonable inferences in favor of the plaintiff. *Shah v. Meeker*, 435 F.3d 244, 248 (2d Cir. 2006). Nonetheless, the court may disregard "conclusions of law or unwarranted deductions of fact". *First Nationwide Bank v. Gelt Funding Corp*., 27 F.3d 763, 771 (2d Cir. 1994) (quoting 2A Moore & Lucas, *Moore's Federal Practice* ¶ 12.08 (2d ed. 1984)). Dismissal under Fed. R. Civ. P. 12(b)(6) is proper where plaintiff fails to plead "enough facts to state a claim to relief that is plausible on its face". *Bell Atl. Corp. v. Twombly*, --- U.S. ---, 127 S. Ct. 1955, 1974 (2007). The Second Circuit does not limit *Twombly's* "plausibility standard" to antitrust cases. *ATSI Commc'ns, Inc.*, 493 F.3d at 98 n.2. Under *Twombly*, a plaintiff must "provide the grounds upon which his claim rests through factual allegations sufficient 'to raise a right to relief above the speculative level'". *Id*. at 98 (citations omitted). Plaintiff has failed to do so.

Moreover, the threshold requirements for issuance of an anti-suit injunction are that (1) the parties be the same in both matters and (2) resolution of the case before the enjoining court be dispositive of the action to be enjoined. *LAIF X SPRL v. Axtel, S.A. de C.V.*, 390 F.3d 194, 199 (2d Cir. 2004). To meet the "same parties" requirement, when (as here) the parties are not identical, a plaintiff must establish that the parties at issue are "sufficiently similar". *MasterCard Int'l, Inc. v. Argencard S.A.*, No. 01 Civ. 3027(JGK), 2002 WL 432379,

at \*10 (S.D.N.Y. Mar. 20, 2002).  If these threshold requirements are met, five additional factors must be considered before an injunction may be granted.  *China Trade & Dev. Corp. v. M.V. Choong Yong*, 837 F.2d 33, 35 (2d Cir. 1987).  Principles of comity counsel that anti-suit injunctions should be "used sparingly" and should be granted "only with care and great restraint".  *Id.* at 36.  The "basic rule" is to allow parallel litigations to proceed in multiple forums.  *MasterCard Int'l, Inc.*, 2002 WL 432379, at \*9-\*10 (noting the "fundamental corollary to the existence of concurrent jurisdiction, which makes parallel proceedings possible: 'parallel proceedings on the same *in personam* claim should ordinarily be allowed to proceed simultaneously, at least until a judgment is reached in one which can be pleaded as res judicata in the other'") (quoting *China Trade*, 837 F.2d at 36).

## A.    PLAINTIFF HAS FAILED TO ALLEGE FACTS SUFFICIENT TO RENDER ITS CLAIMS FACIALLY PLAUSIBLE

Both Counts of the Complaint hinge on an alleged relationship between Defendants and Farimex.  Count I alleges that Defendants are conducting the Farimex Litigation "through" Farimex, which is either Defendants' alter ego or agent, in violation of the arbitration agreement between Plaintiff and Defendants.  Count II alleges that Farimex is bound by the arbitration agreement between Plaintiff and Defendants because it is the alter ego or agent of Defendants.  Plaintiff's failure to allege sufficient facts to render its alter ego or agent theories plausible is fatal to both claims.

### 1.    Plaintiff's Alter Ego Theory Fails

Apart from conclusory allegations, there is nothing alleged to suggest any relationship between Farimex and either defendant.  Defendants and Farimex are separate, independent corporations.  Even where there exists a conceded subsidiary or affiliate relationship between entities, disregarding the corporate form is disfavored under New York

law.  *See, e.g., William Wrigley Jr. Co. v. Waters,* 890 F.2d 594, 600 (2d Cir. 1989) ("It is well settled that New York courts are reluctant to disregard the corporate entity."); *Kalin v. Xanboo, Inc.*, 526 F. Supp. 2d 392, 403-04 (S.D.N.Y. 2007) ("New York courts apply a presumption of separateness to corporations and are hesitant to disregard the corporate form" (internal quotations omitted).)  To establish alter ego status, a court must find: "(i) that the owner exercised complete domination over the corporation with respect to the transaction at issue; and (ii) that such domination was used to commit a fraud or wrong that injured the party seeking to pierce the veil".  *Am. Fuel Corp. v. Utah Energy Dev. Co., Inc.*, 122 F.3d 130, 134 (2d Cir. 1997) (*citing Morris v. New York State Dep't of Taxation & Fin.*, 623 N.E.2d 1157, 1160-61 (N.Y. 1993)).  "[C]onclusory allegations of an alter ego are insufficient to survive a motion to dismiss."  *Xanboo, Inc.*, 526 F. Supp. 2d at 403.  The veil-piercing inquiry involves many factors, including the following:  (1) disregard of corporate formalities; (2) inadequate capitalization; (3) intermingling of funds; (4) overlap in ownership, officers, directors and personnel; (5) common office space, address and telephone numbers of corporate entities; (6) the degree of discretion shown by the allegedly dominated corporation; (7) whether the dealings between the entities are at arm's length; (8) whether the corporations are treated as independent profit centers; (9) payment or guarantee of the corporation's debts by the dominating entity; and (10) intermingling of property between the entities.  *American Fuel Corp.*, 122 F.3d at 134 (citation omitted).

Plaintiff alleges that "Farimex is subject to the complete control", (Cpl. ¶ 3), of Defendants and Alfa Group, but does not allege any of the factors set forth in *American Fuel Corp*.  Instead, Plaintiff makes four irrelevant allegations, which we address in turn.

a.     *Mikhail Fridman and Dmitry Fridman as First Cousins*

Plaintiff alleges that Dmitry Fridman, Farimex's sole director, is the first cousin of Mikhail Fridman, Alfa Group's co-founder and Chairman of its Supervisory Board.  (*Id.* ¶ 51.)  As a primary matter, Mikhail Fridman is Chairman of the Supervisory Board of *Alfa Group*, not either of the Defendants.  Thus, even if the Court could find a familial relationship between Mikhail and Dmitry (which does not exist in fact)[5] and that because of such relationship there is some relationship between Mikhail Fridman and Farimex, it would not follow that Farimex and Defendants are alter egos.  Without more, Plaintiff's allegation regarding the two Fridmans says nothing about the relationship between Farimex and Defendants.

Moreover, even if there were a familial tie asserted by Plaintiff, the allegation fails.  An allegation of familial ties is insufficient to create an "alter ego" relationship.  *See Local Union No. 38*, *Sheet Metal Workers Intern. Ass'n, AFL-CIO v. A&M Heating, Air*, 314 F. Supp. 2d 332, 349-50 (S.D.N.Y. 2004) (holding, under more liberal alter ego standard applied in labor cases, that corporations owned by spouses were not alter egos and noting:  "[w]ere courts to assume alter ego status merely from the closely held ownership of the two companies

---

[5] Such proof would convert this motion to one for summary judgment, with its attendant discovery.  But because Plaintiff has failed to meet its pleading requirements, such a motion would impose an unnecessary burden on Defendants — exactly what *Twombly* intended to preclude.  *See Twombly*, 127 S. Ct. at 1967 ("Probably, then, it is only by taking care to require allegations that reach the level suggesting [an element of a claim] that we can hope to avoid the potentially enormous expense of discovery in cases with no reasonably founded hope that the [discovery] process will reveal relevant evidence [in support of the claim]") (internal quotations and citations omitted).

by members of the immediate family, families would be effectively precluded from organizing their business affairs in any but a single corporate entity").

          b.     *Offshore Trust*

        Plaintiff alleges that Mikhail Fridman created an "offshore trust" for the benefit of Dmitry Fridman and others, which is "believed to be" Farimex's beneficial owner.  (Cpl. ¶ 52.)  Plaintiff offers no fact supporting its allegations that:  a) such a trust exists; b) the trust was created by Mikhail Fridman; c) the trust was created for the benefit of Dmitry Fridman; d) the trust was to be used for litigation and "corporate raiding"; or e) the trust is "the beneficial owner of Farimex".  Importantly, Plaintiff concedes this last point, offering only the passive statement that the trust "is believed to be the beneficial owner of Farimex".  (*Id*. ¶ 52.)  An allegation of "the critical element of ownership over something . . . alleged on information and belief . . . is insufficient to withstand a motion to dismiss".  *Triemer v. Bobsan Corp.*, 70 F. Supp. 2d 375, 377 (S.D.N.Y. 1999); *cf. Rose v. Goldman, Sachs & Co., Inc.*, 163 F. Supp. 2d 238, 242 (S.D.N.Y. 2001) (holding that conclusory allegations based on information and belief are insufficient to withstand a motion to dismiss).

          c.     *The Farimex Litigation*

        Plaintiff alleges that the *claims* asserted by Farimex in the Farimex Litigation are "virtually identical" to the *claim* Eco Telecom submitted in the Arbitration.  (Cpl. ¶ 54.)  Even if this allegation were correct – which it is not, as will be addressed in Part B.1, *infra* – that allegation proves nothing.  The notice of arbitration was filed prior to the filing of the complaint in the Farimex Litigation, and the notice of arbitration and the allegations contained

therein were reported widely and in detail by the media.[6]  (*See* Rolfe Decl. Ex. G; Cpl. Ex. E, at 13.)  Moreover, it is not uncommon for shareholders to file similar suits against corporate defendants with respect to the same occurrence.  *See, e.g., In re Bank of New York Derivative Litig.*, 320 F.3d 291, 295 n.2 (2d Cir. 2003).

Plaintiff further alleges that the documents attached to the Farimex claim were "only available to members of VimpelCom's Board and senior VimpelCom management and, in certain instances, only available to Altimo and its affiliates", implying that Defendants provided the documents to Farimex.  (Cpl. ¶ 55.)  As a preliminary matter, Plaintiff fails even to attempt to identify what document or information relied on by Farimex in its claim could "only" have come from Defendants.  This is because it cannot.  In any event, Plaintiff's assertion is false, as all attachments to Farimex's Statement of Claim would have been available to Farimex through avenues other than Altimo and its affiliates.  As is set forth in the accompanying Declaration of Oxana Balayan, Attachments 6, 7, 17, 18, 20, 22 and 27 to Farimex's Statement of Claim are either VimpelCom documents subject to inspection by its shareholders under Russian law, publicly available documents or Russian legal documents that could be obtained by the public.  (Balayan Decl. ¶¶ 6-15.)  The remaining attachments are either available over the Internet (Rolfe Decl. ¶ 13), court documents relating to the Farimex Litigation (*Id.* ¶ 14), Farimex's own corporate documents (*Id.* ¶ 15) or documents otherwise

---

[6] The Court may take judicial notice of newspaper articles without converting the motion to a motion for summary judgment for the limited purpose of recognizing that news organizations reported widely the allegations in the notice of arbitration.  *See In re Alstom SA Sec. Litig.*, 406 F. Supp. 2d 402, 408-09 (S.D.N.Y. 2005) (noting that courts may take judicial notice of the fact of publication of articles without converting to motion for summary judgment).

available to the general public (*Id.* ¶ 16). Moreover, Defendants are not the principals of every member of "VimpelCom's Board and senior VimpelCom management". (Cpl. ¶ 55.) Indeed, *Plaintiff's* nominees on the VimpelCom Board have access to the documents Plaintiff alleges could only have come from Defendants. Thus, Plaintiff's conclusory allegation that the documents attached to the Farimex Litigation could only have come from Altimo is demonstrably false and fails to provide any evidence of an alter ego relationship.

> d.    *Alfa Capital*

The final fact alleged by Plaintiff in support of its alter ego theory is that "the only evidence of Farimex's ADR holding in the Statement of Claim is a letter from Alfa Capital". (*Id.* ¶ 49.) It is unremarkable that Farimex uses a brokerage firm related to Alfa Group. Alfa Capital is a large investment company, providing investment services to many companies in Russia, Ukraine and the United Kingdom. (Rolfe Decl Ex. H.) Alfa Capital holds a number of securities of Russian blue chip companies for Farimex, not just VimpelCom. (Rolfe Decl. Ex. E.) Furthermore, that Farimex and Alfa Capital, an affiliate of Alfa Group, have a commercial relationship is insufficient to show that Farimex is an alter ego of Defendants here. Indeed, Plaintiff does not even suggest that the alleged relationship between Farimex and Alfa Capital is not arm's length, and thus the allegation fails. *See Phoenix Co., Inc. v. Abrahamsen*, No. 05 Civ. 4894(WHP), 2006 WL 2847812, at *7 (S.D.N.Y. Sept. 28, 2006) (refusing to compel arbitration under alter ego analysis where defendants failed to allege facts showing, *inter alia*, lack of arm's-length dealing).

> **2.    Plaintiff's Agency Theory Fails**

Plaintiff also alleges that Farimex is the "agent" of Defendants. (Cpl. ¶ 78.) As with its alter ego theory, Plaintiff fails to plead sufficient facts to render its claim facially plausible or viable. Under New York law, an agency relationship exists when "there is

agreement between the principal and the agent that the agent will act for the principal and the principal retains a degree of control over the agent". *In re Parmalat Secs. Litig.*, 501 F. Supp. 2d 560, 588 (S.D.N.Y. 2007) (internal quotations and citations omitted). Generally, the element of control is considered the essential characteristic of the principal-agent relationship. *Id.* To bind a principal, an agent must have authority, whether apparent, actual or implied. *Id.*

Plaintiff claims that "Farimex has no distinct corporate identity apart from Eco Telecom, as its conduct (as well as the domination and control over it exercised by Alfa Group and Mikhail Fridman) demonstrates an abandonment of separateness between the two entities". (Cpl. ¶ 79.) This conclusory allegation — with no support whatsoever — is insufficient to support a claim of agency.[7] Plaintiff alleges no agreement and offers no fact supporting the authority of Farimex, an entirely separate corporation, to act on behalf of Altimo or Eco Telecom.

In *Parmalat*, the court was faced on a motion to dismiss with determining whether Plaintiff sufficiently alleged that Deloitte Italy, a subsidiary of Deloitte Touche Tohmatsu ("DTT"), was an agent of Deloitte USA, a separate subsidiary of DTT, through their shared relationship with DTT.[8] The complaint alleged that DTT and Deloitte USA shared officers and directors and that Deloitte USA paid the salaries and benefits of ten to forty per

---

[7] Plaintiff fails to distinguish its agency and alter ego claims, offering no distinct allegation to support the former.

[8] The *Parmalat* Court addressed the issue of whether "Deloitte Italy was DTT's agent, and that DTT in turn was Deloitte USA's agent". *Parmalat*, 501 F. Supp. 2d at 587. The court noted, however, that it would be "possible to interpret the complaints as alleging an *alter ego* theory, despite their express references to agency law". *Id.* at n.149. The court found this potential difference to be "immaterial", given the close relationship between the test for agency and alter ego. *Id.*

cent of DTT's employees. *Parmalat*, 501 F. Supp. 2d at 588-589. In finding that an agency relationship was not sufficiently pleaded, the court noted that "the fact that two corporations share officers and directors does not establish by itself that one corporation is the agent of the other". *Id.* at 588. As to the fact that Deloitte USA paid salaries of certain of DTT's employees, the court noted that one corporation's financing of the operations of another does not necessarily establish agency. *Id.* at 589.

   *Parmalat* is instructive for two reasons. *First*, in *Parmalat*, the links between the Deloitte entities were established, acknowledged and alleged specifically in the complaint. Here, in comparison, other than Plaintiff's conclusory assertion, there is no acknowledged or established relationship between Farimex and Defendants. Although the links between the Deloitte entities were significantly closer than any alleged link here, the *Parmalat* court still declined to find an agency relationship pleaded. This Court, therefore, should refuse to find that an agency relationship has been adequately pleaded here.

   *Second*, *Parmalat* demonstrates that more than one analysis is required here. To find that agency was properly pleaded, the *Parmalat* court was required to determine that Deloitte Italy had an agency relationship with DTT, that DTT had an agency relationship with Deloitte USA, and that through these relationships, Deloitte Italy was the agent of Deloitte USA. Here, to show agency between Farimex and Defendants, Plaintiff would have to allege either an agreement between Farimex and Defendants (which it does not) or facts showing that Farimex is controlled by an offshore trust; that the trust is controlled by Mikhail Fridman; that Mikhail Fridman controls Alfa Group; that Alfa Group controls Altimo; and that Altimo controls Eco Telecom. Plaintiff avoids this process and simply lumps the various entities together. As such, Plaintiff fails to allege facts sufficient to make a finding of agency plausible.

The facts Plaintiff has alleged are insufficient to render its alter ego or agency theory plausible. Plaintiff has offered mere supposition, which is insufficient under *Twombly*. *See Citak & Citak v. St. Paul Travelers Cos.*, No. 07 Civ. 5459(WHP), 2008 WL 1882660, at *2 (S.D.N.Y. Apr. 28, 2008); *see also De Jesus v. Sears, Roebuck & Co.*, 87 F.3d 65, 70 (2d Cir. 1996) (affirming dismissal where pleadings were "devoid of *any* specific facts or circumstances" supporting alter ego allegation); *City Nat'l Bank of Florida v. Morgan Stanley DW, Inc.*, No. 05 Civ. 2739(DLC)(JCF), 2007 WL 927428, at *4 (S.D.N.Y. Mar. 29, 2007), *adopted*, 2007 WL 1425790 (S.D.N.Y. May 15, 2007) (recommending dismissal of alter ego claim on the pleadings, because "[g]iven the numerous factors that must be taken into account when conducting the alter ego analysis, [defendant's] general assertion [that third-party individual defendant is alter ego of third-party defendant-corporation], together with the evidence of a few shared characteristics between [the individual and the corporation], is not enough to establish that [the individual] is an alter ego of the company").

### B.    PLAINTIFF FAILS TO MEET THE REQUIREMENTS FOR AN ANTI-SUIT INJUNCTION

The Plaintiff cannot meet the "same parties" requirement for issuance of an anti-suit injunction under agency, alter ego or any other theory, and the Complaint should be dismissed. Even assuming, however, contrary to fact, that Plaintiff were to allege facts sufficient to establish that Farimex and Defendants are the "same parties", Plaintiff's claims should still be dismissed for failure to plead adequately the remaining elements necessary for an anti-suit injunction.[9] Plaintiff, as a threshold matter, must show that the resolution of the

---

[9] Although this analysis is only relevant should the Court accept that Defendants and Farimex are "substantially similar", Defendants, in arguing that Plaintiff is not entitled to an

case before the enjoining court would be dispositive of the action to be enjoined. *LAIF X SPRL v. Axtel, S.A. de C.V.*, 390 F.3d 194, 199 (2d Cir. 2004). In addition, the Court must consider five additional factors in determining whether to grant the injunction: (1) the frustration of a policy in the enjoining forum; (2) the vexatiousness of the foreign litigation; (3) a threat to the issuing court's jurisdiction; (4) prejudice caused by the foreign litigation to other equitable considerations; and (5) delay, inconvenience, expense, inconsistency or unseemly race to judgment created by adjudication of the same issues in separate actions. *China Trade*, 837 F.2d at 35. Of these factors, the Second Circuit has placed greater emphasis on the first and third factors, noting that "vexatiousness" and "a race to judgment" are likely to be present in any parallel proceeding. *Id.* at 36; s*ee also In re Rationis Enter., Inc. of Panama*, 261 F.3d 264, 271 (2d Cir. 2001) (noting that the first and third factors are "entitled to far greater weight").

### 1.    The Arbitration is Not Dispositive of the Farimex Litigation

Plaintiff has failed even to allege that the Arbitration would be dispositive of the Farimex Litigation. It would not. The sole issue in the Arbitration is whether Plaintiff delayed the proposed URS acquisition by directing or influencing its directors on the VimpelCom board to vote against the acquisition. (*See* Cpl. Ex. D. at ¶¶ 10-12.) In the Arbitration, Eco Telecom alleges that Plaintiff blocked the acquisition of URS because it did not want VimpelCom to acquire a business that competed with Closed Joint Stock Company Kyivstar G.S.M. ("Kyivstar"), a Ukrainian wireless company in which companies affiliated with Plaintiff have a

---

anti-suit injunction, in no way admit any connection to Farimex. Defendants do not oppose an injunction against Farimex in principle, as Defendants would like to see an end to the Farimex Litigation; however, they do oppose the issuance of such an order on the grounds that Defendants and Farimex are "substantially similar".

majority interest.  (*Id.*)  Eco Telecom seeks damages (the economic value lost to it by the delay in the acquisition of URS) that would be awarded to Eco Telecom in the event of a favorable judgment.

The issues, as well as the relief requested, in the Farimex Litigation are different.  The monetary relief requested by Farimex is for the benefit of VimpelCom, rather than Farimex.  (*See* Cpl. Ex. E, at 21-22.)  Consistent with this, the Russian court awarded VimpelCom — rather than Farimex or Defendants — damages.  (Rolfe Decl. Ex. A.)  As such, for there to be any profit in Defendants' alleged scheme, it would require additional (and unspecified by Plaintiff) steps to extract the awarded money from VimpelCom, should VimpelCom even choose to enforce the judgment.[10]

Furthermore, the Farimex Litigation is based on Farimex's assertion that Plaintiff and Defendants, together, failed to implement VimpelCom's stated strategy of actively entering the markets of the Commonwealth of Independent States ("CIS") countries, including Ukraine.  (Cpl. Ex. E. at 5, 21.)  For example, Farimex alleges that, in light of Plaintiff's hindrance of the URS acquisition, Altimo refused to "explore any other options for the entry of OAO VimpelCom into the Ukrainian market for mobile communications [indicating] that the directors representing Altimo were not interested in a more rapid initiation of work by OAO VimpelCom on the Ukrainian market that offers high potential".  (*Id.* at 10.)  Specifically, Farimex alleges that Plaintiff and Defendants delayed VimpelCom's entry into the Ukrainian market by failing to reach a deal on the acquisition of Kyivstar or URS by VimpelCom.  (*Id.* at

---

[10] Because the Russian court has entered judgment in favor of VimpelCom, an injunction against Farimex would be moot, as the Russian court's judgment is now VimpelCom's to enforce.

5.)  Farimex also alleges specifically that "Altimo blocked the acquisition of CJSC Kyivstar GSM by OAO VimpelCom".  (*Id*. at 15.)  Failure to enter the Ukrainian market timely, Farimex alleges, benefited Altimo's indirect subsidiary MegaFon, thus revealing a conflict of interest comparable to that alleged against Plaintiff.  (*Id*. at 11, 15.)  Farimex concludes by alleging that, in light of these conflicts of interest of Altimo and Telenor, VimpelCom will be hindered in pursuing its stated strategy of expansion into the CIS.  (*Id*.)

**2.      Consideration of the Additional Anti-Suit Injunction Factors Militates in Favor of Dismissal**

Even if Plaintiff could meet the threshold requirements, the Court would still need to consider the five additional factors in determining whether to grant an injunction.  As to the first factor, Federal policy strongly favors the enforcement of arbitration agreements.  *See LAIF X SPRL*, 390 F.3d at 199.  An anti-suit injunction may be appropriate when a party initiates foreign proceedings in "an attempt to sidestep arbitration".  *Id*. (citation omitted).  The Farimex Litigation, however, in no way disrupts the Arbitration initiated by Eco Telecom, which is proceeding according to schedule.  Here, Defendants are not contesting the Arbitration, so it cannot be said that they are attempting to avoid the process.  *See LAIF X SPRL*, 390 F.3d at 200 (denying anti-suit injunction where a company was simultaneously seeking a ruling from Mexican court and participating in arbitration).  Moreover, allegations of corporate mismanagement of a Russian corporation involving foreign shareholders "in no way implicates 'the strong public policies of the enjoining forum'".  *Id*. (internal quotations and citation omitted).

The third factor also militates in favor of dismissal.  "[P]arallel proceedings on the same *in personam* claim should ordinarily be allowed to proceed simultaneously, *at least until a judgment is reached in one which can be pled as res judicata in the other*".  *China*

18

*Trade*, 837 F.2d at 36 (emphasis added) (internal citations omitted). The claims before the arbitral tribunal and the Russian court are *in personam* claims. There is no judgment of the arbitral tribunal or this Court to protect.[11] Moreover, the Russian court has not attempted to enjoin the Arbitration, nor has it sought to prevent this Court from exercising jurisdiction. *Id.* at 37.

As to the second, fourth and fifth factors, Plaintiff makes only a single effort to address any of them: it claims that the Farimex Litigation is "vexatious". To support this, Plaintiff recounts other alleged instances of "vexatious" litigation by Alfa Group affiliates, all of which are very different and irrelevant to the question of whether the Farimex Litigation is vexatious in the instant case.[12] As a threshold matter, the *China Trade* court noted that because factors two and five "are likely to be present whenever parallel actions are proceeding concurrently, an anti-suit injunction grounded on these additional factors alone would tend to undermine the policy that allows parallel proceedings to continue and disfavors anti-suit injunctions". *Id.* at 36. Thus, the creation of some additional costs and delay is "insufficient to outweigh the important international comity interests that arise when foreign and domestic courts have concurrent jurisdiction over the same *in personam* claim". *MasterCard Int'l. Inc.*, 2002 WL 432379, at *12.

-----

[11] In fact, issuance of an injunction at this point would interfere with the Russian court's judgment.

[12] Similarly, Plaintiff's discussion regarding its 2005 arbitration against Eco Telecom relating to the nomination of candidates for election to the VimpelCom Board to the VimpelCom Shareholders Agreement (Cpl. ¶¶ 36-39) is also irrelevant.

Furthermore, the only similarity alleged between these other litigations and the instant case is Plaintiff's speculation as to Alfa Group's involvement.  Plaintiff speculates — without factual support — that Alfa Group is complicit in litigation brought by an individual named Victor Makarenko in Russia against VimpelCom (Cpl. ¶¶ 23-32), an action brought by EC Venture SA, a Swiss corporation, against Storm LLC, an Alfa affiliate, in Ukraine (*id*. ¶ 69) and an action brought by ZAO Tetlis Limited against TNK-BP in Russia (*id*. ¶ 70).  Plaintiff's only support for this speculation, however, are vague assertions that the cases were brought based on documents that could only have come from Defendants (*id*. ¶¶ 27, 69) or unnamed and unattached press reports that apparently state that a litigant is controlled by Alfa Group  (*id*. ¶ 70).  Such unfounded allegations have no place here.

Plaintiff also places great weight on an allegedly similar dispute between Plaintiff and Storm LLC, Altimo and Alpren Limited ("Alpren"), a Storm LLC shareholder (Cpl. ¶¶  59-68), in which Judge Lynch granted a preliminary anti-suit injunction for Plaintiff.[13] *See Storm LLC v. Telenor Mobile Commc'ns AS*, No. 06 Civ. 13157(GEL), 2006 WL 3735657 (S.D.N.Y. Dec. 15, 2006).  The facts of that dispute are, however, clearly different from those at issue here.  The Storm dispute involved foreign litigation brought by Alpren, which was concededly a shareholder of Storm, and Telenor was not party to the foreign proceedings.  *Id.* at *9-*10.  Here, despite Plaintiff's contention (rejected by the Russian court) that it has not been served (Cpl. ¶ 3), Plaintiff has participated vigorously in the Farimex Litigation.  (*See* Rolfe Decl Ex. F (translated minutes of July 15, 2008 hearing of Russian court reflecting that

---

[13] This injunction was appealed by Altimo and Alpren and, before argument in the Second Circuit, the injunction and opinion on which it was based were vacated and the case dismissed as moot, since the arbitration it sought to protect had ended.

"representatives of Telenor East Invest AS, a Respondent" were present and actively participating).)  The facts alleged here involve a foreign litigation brought by an entity that is only connected to Defendants by Plaintiff's speculation.  Plaintiff pleads no fact adequate to support that connection.

       Enjoining the Farimex Litigation would also violate principles of international comity and interfere with the interest and ability of the Russian courts to conduct their own legal affairs.  *China Trade*, 837 F.2d at 36.  That Farimex chose to bring its claim to the Russian court is proper under Russian law.  Indeed, the Russian court explicitly found that venue was appropriate.  (Cpl. Ex. I, at 3.)  Questions of its jurisdiction should be left to that court to decide.  As the Second Circuit concluded in *LAIF X SPRL*:

> "Comity militates strongly against an injunction here.  LAIF X invested in a Mexican enterprise, governed by Mexican law.  A question has arisen under Mexican law — whether LAIF X is an Axtel shareholder — and that question has been presented to a Mexican court.  Mexico has a strong interest in determining who is a shareholder of a Mexican corporation and whether particular transactions were permissible under the bylaws of a Mexican corporation . . . .  Finally, although Telinor seeks a ruling of Mexican law from a Mexican court, Telinor continues to participate in the . . . arbitration . . . it cannot be said that Telinor's conduct is an evasion of the arbitral forum or an attempt to sidestep arbitration."

390 F.3d at 200 (internal quotation omitted).

       For the same reasons, comity militates against an injunction here.  VimpelCom is a Russian corporation.  The litigation before the Russian court will address whether large non-American shareholders of VimpelCom have caused their director nominees to violate the company's bylaws and fiduciary duties under Russian law.  Russia therefore has a strong interest in maintaining jurisdiction over the Farimex Litigation.  Furthermore, Defendants are participating in the Arbitration — indeed, Eco Telecom commenced it.  There is no threat to the Arbitration that could support the issue of an anti-suit injunction under the remaining *China*

21

*Trade* factors.  Moreover, there is no threat to this Court's jurisdiction or its capacity to issue a judgment in appropriate circumstances.

Moreover, Plaintiff's allegations implicate serious comity concerns, as they are based on the notion that the Russian courts are somehow complicit in the scheme to avoid arbitration.  For example, Plaintiff alleges that the hearings in the Russian court have been "summary", and implies that the court acted improperly when it ordered VimpelCom to produce "voluminous" documents for the purposes of assessing damages and chose to appoint an expert nominated by Altimo to review those documents.  (Rolfe Decl. Ex. B.)  Telenor ignores the fact that the Russian court invited all parties to nominate experts, but only Altimo did so.  (*Id*. Ex. I.)

The Second Circuit is "reluctant to find foreign courts 'corrupt' or 'biased'" in the absence of substantial evidentiary submissions.  *In re Arbitration Between Monegasque De Reassurances S.A.M. v. Nak Naftogaz Of Ukraine*, 311 F.3d 488, 499 (2d Cir. 2002) (refusing to find Ukraine court inadequate alternative forum for arbitration parties); *see also Overseas Media, Inc. v. Skvortsov*, 441 F. Supp. 2d 610, 617-18 (S.D.N.Y. 2006), *aff'd*, 2008 WL 1994981 (2d Cir. May 8, 2008) (declining to supervise "the integrity of the [Russian] judicial system" and finding that system adequate to meet *forum non conveniens* test).  Here, there is no evidence that the Russian court is in any way acting improperly, or that it did not consider its jurisdiction over the Farimex Litigation.  Thus, Plaintiff should raise its defenses in the Russian court system.

**Conclusion**

For the foregoing reasons, Defendants respectfully request that the Court grant their motion to dismiss the Complaint pursuant to Fed. R. Civ. P. 12(b)(6).

August 22, 2008

CRAVATH, SWAINE & MOORE LLP,

By _Ronald S. Rolfe_

Ronald S. Rolfe
A member of the firm

Worldwide Plaza
825 Eighth Avenue
New York, NY 10019-7475
(212) 474-1000
rrolfe@cravath.com

*Attorneys for Defendants Altimo
Holdings & Investments Limited and
Eco Telecom Limited*

23